|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:24-cr-00217 |
| | ) | Judge Trauger |
| PHILIP TAYLOR SOBASH | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## <u>SENTENCING MEMORANDUM IN SUPPORT OF PHILIP SOBASH AND STATEMENT REGARDING 18 U.S.C. § 3553(A) FACTORS</u>

Defendant Philip Sobash ("Defendant") or ("Mr. Sobash") respectfully submits this memorandum for the Court's consideration in connection with his sentencing on June 17, 2026.

## I.      INTRODUCTION

Mr. Sobash recognizes that he has engaged in very damaging criminal behavior and that he has seriously harmed multiple victims.  *See* Forensic Psychological Evaluation Report prepared by Dr. Julie A. Gallagher ("Dr. Gallagher Report"), at p. 11, attached at **<u>Exhibit A</u>**  (Mr. Sobash advised, "[My behavior] hurt people. I will probably never know the full damage of what I did. I feel extremely bad about it.").  Mr. Sobash deeply regrets his criminal conduct and accepts full responsibility for his wrongdoing. He will take the opportunity of his allocution to sincerely apologize to the victims of his crimes, as well as to the Government and the community at large. Mr. Sobash is fully aware that the offense of conviction could reasonably lead the Court to believe that he is incorrigible and unwilling to do the work necessary to lead a good and law-abiding life. We endeavor to present through this memorandum, and the attached character letters and expert report of Dr. Julie Gallagher, a fuller picture of the Defendant; one who has accepted responsibility for his actions and demonstrated a sincere commitment to, and to confront and

1

change his deviant and deceitful instincts so that he may be rehabilitated, and become a productive, law-abiding, and responsible member of society upon his release. *See* Dr. Gallagher Report at p. 12 ("Dr. Sobash indicated he has done a 'root cause analysis' on his behavior and said he wants to 'make sure I never do that again.'") In addition to participation in BOP sex offender treatment programming, Mr. Sobash "said that after his release he is 'interested in sex addiction treatment or something with accountability to make sure I'm keeping myself where I need to be.'").

Mr. Sobash knows that he must serve a substantial prison sentence because of the severity of his conduct – a reality that he understands and accepts. That being said, for the reasons stated more fully below, Mr. Sobash respectfully submits that a downward variance is warranted here, and that a sentence of 216 months is a substantial sentence that is sufficient, but not greater than necessary, to promote the goals of sentencing pursuant to 18 U.S.C. § 3553 (a).

**II.        BACKGROUND**

a.        <u>Personal and Family Background</u>

Mr. Sobash was born on May 5, 1990, in Cincinnati, Ohio. PSR ¶ 44. He is the only child of the marital union of Frank Sobash and Millie Thomas, who divorced when Mr. Sobash was two years old. PSR ¶ 45. Ms. Thomas remarried when Mr. Sobash was six years of age. *Id.* As emphasized in the attached letters of support, attached at **<u>Exhibit B</u>**, Mr. Sobash remains very close to his family, who are described in the attached letters as "loving, supportive, and deeply committed to him." *See* letter from Scott Sorenson. According to Mr. Sobash's father, Frank Sobash, Mr. Sobash "has the support of a large and loving family who will stand beside him through every step of this process and beyond." Mr. Sobash's family remains "committed to helping him reestablish himself as a productive, responsible, and compassionate member of this

2

community." Patrick and Victoria McCollim write that "Philip is surrounded by a strong network of family and loved ones who are fully prepared to stand by him. His father—my brother—has been, and will continue to be, a steadfast source of guidance and accountability."

Mr. Sobash was diagnosed with Wilson's disease when he was approximately 14 years old. PSR ¶ 46. Wilson's disease is a rare inherited condition that causes copper levels to build up in several organs, especially the liver, brain, and eyes. *Id*. When left untreated, the disease causes mental health issues, including changes in personality. *Id.* Studies also support the finding of weakened impulse control in patients with Wilson's disease. Dr. Gallagher Report at p. 22. The disease can also cause psychiatric symptoms such as depression and anxiety. *Id.* at p. 21. Wilson's disease can also cause "[d]isinhibition and impulsivity . . . in some patients." *Id*. at p. 21.[1]

Mr. Sobash draws the Court's attention to his medical history not as an excuse for his criminal conduct, but rather to provide the Court with important context. As Dr. Gallagher documents in her Report, "the finding of weakened impulse control in patients with Wilson disease has more support [than anecdotal reports]." *Id*. at p. 22. Dr. Gallagher concluded that "it is possible that [] deficits [in inhibition] were present and contributed to Dr. Sobash's offending behavior." *Id*.

      b.     Professional History

Mr. Sobash always maintained a strong work ethic and had aspirations of becoming a doctor from a young age. According to Frank Sobash, Mr. Sobash "was determined to become a physician, not for prestige or wealth, but because he felt a calling to serve." Letter from Frank Sobash, attached at **Exhibit B**. Mr. Sobash graduated from the Medical University of South

---

[1] Dr. Gallagher notes that, "[i]t is hypothesized that, when present, sexual disinhibition in Wilson disease [patients] likely reflects damage to certain circuits in the brain (front0-temporal-strail-limbic circuits). *Id.* at p. 21.

3

Carolina in Charleston, South Carolina, in 2018, and worked as a physician until 2023. As the attached letters of support demonstrate, Mr. Sobash made a lasting positive impact through his work. According to Dr. Mohammed El Geneidy, Mr. Sobash "connected with patients in a way that felt sincere and grounded. He had a natural ability to sit with individuals facing frightening diagnoses and explain complex medical information in terms they could understand." Letter from Dr. Mohammed El Geneidy, attached at **Exhibit B**.  Dr. El Geneidy further explained, "[i]n medicine, character is revealed over time, particularly, under stress. In those moments, I saw Philip as a thoughtful and conscientious physician who cared deeply about doing right by his patients."

### III.    SENTENCING GUIDELINES COMPUTATION

Mr. Sobash's conviction for one count of Sexual Exploitation of a Minor pursuant to 18 § U.S.C. 2251(a), (e) is governed by U.S.S.G. §2G2.1. Probation has calculated Mr. Sobash's offense level at a level 40, with a Guideline range of  292- 360 months of incarceration.  PSR ¶ 78. Probation has recommended a sentence at the lowest range of the Guidelines, specifically, a sentence of 292 months, followed by 5 years of Supervised Release. *Id*

The parties disagree as to the application of certain enhancements, as well as to whether certain conduct to which Mr. Sobash did not plead guilty constitutes "relevant conduct" under U.S.S.G. § 2G2.1(d)(1). Mr. Sobash addresses each of these issues in turn.

a.    <u>The Obstruction of Justice Enhancement Does Not Apply</u>

The Government argues for a 2-point enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1, based on conduct which the Government admits occurred contemporaneously with Mr. Sobash's arrest. As Comment D to U.S.S.G. § 3C1.1 makes clear, and Probation agrees, the enhancement does not apply. PSR ¶ 16.

The obstruction of justice guideline reads, "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense…increase the offense level by 2 levels." U.S.S.G. § 3C1.1. Of note, pursuant to Comment D, the enhancement is not to be applied where "such conduct occurred contemporaneously with arrest (*e.g.*, attempting to swallow or *throw away* a controlled substance)" (emphasis added) unless the conduct in question "resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender."

The conduct at issue is precisely the sort of conduct excluded from consideration as obstruction under Comment D to U.S.S.G. § 3C1.1. Suspecting that law enforcement had arrived to arrest him, Mr. Sobash threw the evidence in question over the fence of his residence into the yard next door. *See* December 19, 2024, FBI Report, attached at **Exhibit C** ("Approximately 30 seconds after the sirens were initiated, SAs Blomstrom and Castilo observed an item was thrown from the back patio of the residence into the yard of the neighboring house directly behind the residence."). Mr. Sobash's actions "clearly fall within" Commend D. *See* Addendum to the PSR at p. 33; *see also United States v. Perry,* 991 F.2d 304, 312 (6th Cir. 1993) (holding the district court erred in application of obstruction of justice enhancement where the defendant's "hurried attempt" to hide evidence in a box while police stood at the front door to arrest the defendant "fit squarely within the Commentary as an act not supporting the enhancement").

Further, as emphasized in the attached report, the evidence was promptly recovered by law enforcement. The government's investigation was not hindered in any way. *See* **Exhibit C** ("Once the target residence was secured…. Agents located a silver in color external hard drive laying on the ground near the privacy fence separating the target residence. The hard drive was

5

seized as evidence and returned to the target residence."). The enhancement does not apply based on these facts. *See United States v. Rosales*, 990 F.3d 989, 999 (6th Cir. 2021) (finding that the district court erred by applying an obstruction of justice enhancement when it failed to find that defendant's conduct actually significantly hindered the investigation); *see also United States v. Williams,* 952 F.2d 1504, 1516 (6th Cir. 1991) ("The focus of the guideline is on whether defendant ... *succeeded* in significantly impeding the investigation.").

       b.      The Use of Computer Enhancement Should Not Apply

Mr. Sobash also objects to the application of the two-point enhancement for the use of a computer pursuant to U.S.S.G. § 2G2.1(b)(6)(B).  Because essentially all child pornography offenses involve the use of a computer, the enhancement is theoretically always applicable. Indeed, according to the U.S. Sentencing Commission's Statistics from Fiscal Year 2015, Courts applied this enhancement in 67% of cases sentenced under § 2G2.1 during that time period.[2] There is nothing about Mr. Sobash's conduct that distinguishes him from any person to whom the baseline offense level is applicable under § 2G2.1. There was nothing unique in the manner in which Mr. Sobash utilized the computer to commit the offense conduct.  Thus, this enhancement says nothing about the individual culpability of Mr. Sobash and would serve to only to arbitrarily increase Mr. Sobash's offense level by two points. The enhancement should not be applied in this instance. *See United States v. Brooks*, 628 F.3d 791, 799–800 (6th Cir. 2011) (holding that district courts may disagree with the Guidelines for policy reasons); *see also United States v. Jacob*, 631 F.Supp.2d 1099, 1115 (N.D. Iowa 2009) (holding that at U.S.S.G. § 2G2.1 could be "rejected on

---

[2] *The Use of Guidelines and Specific Offense Characteristics, Offender Based*, Fiscal Year 2015, U.S. Sentencing Commission, at 44 (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2015/Use_of_SOC_Offender_Based.pdf.pdf).

categorical, policy grounds" because the guideline " recommends enhancements for conduct present in nearly every case to which the guideline would apply").

          c.        <u>Conduct Relating to Victims Numbers 2 through 7 does not Constitute "Relevant Conduct" under U.S.S.G. § 2G2.1(d)(1)</u>

Mr. Sobash agrees with Probation's conclusion that conduct relating to victims numbers 2 through 7 does not constitute "relevant conduct" under U.S.S.G. § 2G2.1(d)(1) and therefore cannot be used to create pseudo-counts. On October 2, 2025, Mr. Sobash pled guilty to Count One of the Indictment. PSR § 3. Count 1 of the Indictment pertains to "Minor Victim 1" and is expressly confined to October 11, 2018, through May 31, 2019. Indictment at p. 1, *United States v. Philip Sobash,* Case No. 3:24-cr-00217 (M.D. Tenn. Dec. 4. 2024); PSR ¶ 1.

"In cases involving the exploitation of multiple minors, the Guidelines instruct the district court to determine the defendant's offense level by applying Chapter Three, Part D (Multiple Counts) 'as if the exploitation of each minor had been contained in a separate count of conviction.'" *United States v. Schock*, 862 F.3d 563, 567 (6th Cir. 2017) (quoting U.S.S.G. § 2G2.1(d)(1)). "This provision applies 'if the *relevant conduct* of an offense of conviction includes more than one minor being exploited' and regardless of whether the additional minors are cited in the count of conviction." *Id.* (quoting U.S.S.G. § 2G2.1(d)(1) cmt. n.7) (emphasis added). As the Sixth Circuit recognized in *Schock*, "[t]he Guidelines provide two definitions of 'relevant conduct.'" *Id.* First, under § 1B1.3(a)(1), relevant conduct is defined as "all acts and omissions committed ... or willfully caused by the defendant ... that *occurred during the commission of the offense of conviction*, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* (alterations in original) (quoting U.S.S.G. § 1B1.3(a)(1)) (emphasis added). Second, pursuant to §

7

1B1.3(a)(2), "for those offenses 'of a character for which § 3D1.2(d) would require grouping of multiple counts,' relevant conduct also extends to 'all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction.' " *Id.* (alteration in original) (quoting U.S.S.G. § 1B1.3(a)(2)).

As Probation correctly concluded in the PSR, the Court cannot recognize "pseudo counts" for Victims 2 through 7. First, the offense of conviction is expressly confined to October 11, 2018, through May 31, 2019, and the conduct concerning Victims 2 through 7 occurred outside of this time window. Further, the other victim's conduct, as outlined in the PSR, did not occur in the course of attempting to avoid detection or responsibility for the offense of conviction. Accordingly, the other conduct is not "relevant conduct" under U.S.S.G. § 2G2.1(d)(1) and cannot be used for the purposes of creating pseudo-counts. *Schock*, 862 F.3d at 567. [3]

### IV. STATEMENT OF THE 18 U.S.C. § 3553(a) FACTORS

In the post-*Booker* world, district court judges are empowered with considerable discretion in sentencing. *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). After *Booker*, the applicable United States Sentencing Guideline range is treated merely as advisory, and the sentencing court is free to exercise its discretion to impose a reasonable sentence outside the Guideline range that is "sufficient, but not greater than necessary" based on the factors articulated in U.S.S.G. § 3553(a); *United States v. Grossman,* 513 F.3d 592, 594 (6th Cir. 2008). In doing so, Courts are instructed to

---

[3] The Government also argues that pursuant to U.S.S.G. § 1B1.2(c), Mr. Sobash's plea agreement establishes the commission of six additional offenses, specifically, six violations of 18 U.S.C. § 2251(a). This argument fails as Sobash's plea agreement fails to address all of the requisite elements of the six additional offenses. As such, U.S.S.G. § 1B1.2(c) does not apply. *See United States v. Pennington,* 78 F.4th 955, 969 (6th Cir. 2023) (declining to apply U.S.S.G. § 1B1.2(c) where defendant's plea agreement failed to address all of the requisite elements of the additional offense).

make "an individualized assessment based on the facts presented." *United States v. Beach,* 275

Fed. Appx. 529, 534 (6th Cir. 2008). The § 3553(a) factors are:

> (1)     The nature and circumstances of the offense and the history
>         and characteristics of the defendant;
>
> (2)     The need for the sentence imposed -- (A) to reflect the seriousness of the
>         offense, to promote respect for the law, and to provide just punishment for
>         the offense; and (B) to afford adequate deterrence to criminal conduct…;
>
> (3)     The kinds of sentences available;
>
> (4)     The kinds of sentence and the sentencing range established for -- (A) the
>         applicable category of offense committed by the applicable category of
>         defendant as set forth in the guidelines -- (i) issued by the Sentencing
>         Commission . . .;
>
> (5)     Any pertinent policy statement -- (A) issued by the Sentencing
>         Commission pursuant to section 994(a)(2) of title 28, United States Code;
>
> (6)     The need to avoid unwarranted sentence disparities among defendants with
>         similar records who have been found guilty of similar conduct; and
>
> (7)     The need to provide restitution to any victims of the offense.

18 U.S.C. §§ 3553(a)(1)-(a)(7).

While the Guidelines are the starting point and the initial benchmark, they are only one

consideration. Indeed, "a district court may … disagree with a Guideline for policy reasons

and may reject the Guidelines range based on that disagreement." *Brooks*, 628 F.3d at 799.

*United States v. Herrera–Zuniga,* 571 F.3d 568, 585–86 (6th Cir.2009) (concluding that the

Supreme Court's decision in *Kimbrough v. United States,* 552 U.S. 85, 109–110, 128 S.Ct. 558,

169 L.Ed.2d 481 (2007), authorizes district courts to reject a Guidelines range because they

disagree with the policy rationale behind the applicable Guideline); *United States v.*

*Janosko,* 355 Fed. Appx. 892, 895 (6th Cir.2009) (recognizing that "district courts may choose

to reject guideline sentences for child-pornography offenses simply due to policy disagreements

with those guidelines"); *Grossman,* 513 F.3d at 592 (holding "district court judges are involved in an exercise of judgment, not a ritual" and may exercise their discretion to vary from the guidelines calculations).

Taking account of the factors and characteristics described herein, Mr. Sobash respectfully submits that a downward variance is warranted, and a sentence of 216 months is sufficient, but not greater than necessary, to promote the goals of sentencing pursuant to 18 U.S.C. § 3553 (a).

        a.      <u>Section 3553(a)(1): The Nature and Circumstances of the Offense and The History and Characteristics of the Defendant</u>

Mr. Sobash does not contest the seriousness of his offense. Mr. Sobash pleaded guilty to the offense of conviction and admitted to all material facts of Count one at the change of plea hearing on October 2, 2025.   Mr. Sobash committed serious federal crimes and understands that he has caused significant harm to the victims of his criminal behavior. Indeed, as reflected in the attached Gallagher Report, Mr. Sobash recognizes that he "will probably never know the full damage of what [he]did." Dr. Gallagher Report at p. 12, attached at **<u>Exhibit A</u>**. Mr. Sobash not only accepts full responsibility for his conduct, he also deeply regrets his actions, and is prepared to inform the Court that he has experienced a great deal of remorse and shame as a result of his role in this offense. Most importantly, Mr. Sobash is committed to using his incarceration period to obtain whatever help is available so that he can prepare himself to lead a law-abiding life upon his release from prison.

Notably, the accompanying character letters establish that Mr. Sobash "retains the capacity to learn from this experience and to rebuild his life in a constructive and meaningful way." Letter from Mohammad El Geneidy, attached at **<u>Exhibit B</u>**. Scott Sorenson writes that he "truly believe[s]" Mr. Sobash "is capable of redemption and of continuing to contribute

10

positively to society." As such, the Court is respectfully urged to consider "the full measure" of Mr. Sobash's "life and character" in rendering its sentence pursuant to Section 3553(a)(1). *See* letter from Wade Bonner, attached at **Exhibit B**. According to Frank Sobash, "like all of us Philip is human and has made mistakes. But I know the man my son is at his core – empathetic, intelligent, remorseful, and determined to grow from this experience. He does not minimize his errors; he accepts responsibility and the consequences that come with them. What he hopes for, and what we as a family humbly ask for, is the opportunity for rehabilitation rather than destruction – the chance for him to rebuild his life and once again contribute to society in a positive way." Letter from Frank Sobash, attached at **Exhibit B**.

    b.  <u>Section 3553(a)(2): Punishment, Deterrence and Rehabilitation</u>

Section 3553(a)(2) requires the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the four purposes of sentencing set forth in that section -- punishment, specific deterrence, general deterrence and rehabilitation. Mr. Sobash respectfully submits that a sentence of 216 months of incarceration would adequately serve these goals.

Mr. Sobash understands that a long term of incarceration is warranted. However, a term of 216 months, which is 36 months (three years) longer than the 15 year minimum set by Congress, is more than sufficiently long and punitive to reflect the seriousness of the offense, promote respect for the law, provide a just punishment, afford adequate deterrence, and protect the public, as required by 18 U.S.C. 3553(a)(2).

While his child pornography offenses are very serious, Mr. Sobash did not engage in hands-on sexual behavior with a child. Mr. Sobash has acted out of a significant sexual addiction and mental health issues. *See* Gallagher Report at pp. 20-22. As reflected in the attached Gallagher Report, Mr. Sobash is committed to seeking treatment during his lengthy period of

11

incarceration. *See* Dr. Gallagher Report at pp. 12; 26-27, attached at **Exhibit A**. According to Dr. Gallagher,  Mr. Sobash "demonstrated good insight into his offenses and expressed remorse for the impact they had on the victims. He did not blame the victims for what had happened, minimize the harm that occurred, or rationalize his own behavior." *Id.* at  pp. 26-27. Mr. Sobash needs treatment, including sex offender treatment, and is committed to getting this treatment while incarcerated. *See* letter from Frank Sobash, attached at **Exhibit B** ("Philip's life has been devoted to healing; we ask for the chance for him to heal, too.").

Mr. Sobash's age provides further grounds for this Court to impose a sentence below the Guidelines range. In considering the need for general and specific deterrence at 18 U.S.C. 3553(a)(2), it is relevant to consider Mr. Sobash's age because recidivism rates decline dramatically with age. According to a study conducted by the U.S. Sentencing Commission, "older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed."[4]  According to the study, the rate of recidivism drops significantly for individuals who are above age 50 upon release. *Id.* at p. 22. Specifically, among offenders released younger than age 21, 67.6% were rearrested and 48.5% were reconvicted after release. However, of those between ages 50 to 54 when released, only about 15.9% of those offenders were reconvicted of a crime. *Id.* at pp. 22- 23. According to Dr. Gallagher, Mr. Sobash's "risk for general recidivism appears to be below average…. [and] will continue to drop as he ages." Dr. Gallagher Report at p. 33.  Mr. Sobash is currently 36 years old, and, if sentenced to 218 months, will be in his early 50s  upon his release. Thus, based on his age alone, Mr. Sobash is unlikely to reoffend. The low chance of recidivism is further reduced in

---

[4] The Effects of Aging on Recidivism Among Federal Offenders, The U.S. Sentencing Commission, 2017, at 3 (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf) .

light of the sincerity of Mr. Sobash's remorse and his commitment to seek sex offender treatment. Accordingly, the requested sentence will more than adequately protect the public and afford specific deterrence.

c.    Section 3553(a)(3) & (a)(4): The Kind of Sentences Available and the Need to Avoid Unwarranted Sentence Disparities

The child pornography guidelines have faced significant criticism. Indeed, courts have declined to apply the guidelines at issue on the basis that the guidelines improperly skew sentences upward without regard to a particular defendant's conduct or characteristics. *See. United States v. Jacob*, 631 F.Supp.2d 1099, 1115 (N.D. Iowa 2009); *United States v. Price*, 775 F.3d 828, 841 (7th Cir. 2014) (upholding district court's decision to vary from U.S.S.G. § 2G2.1 where judge reasoned that the guideline called for enhancements that apply in nearly every case, exert automatic upward pressure on sentences and failed to separate less dangerous offenders from those who are more dangerous); see *also United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010) (noting, in the context of fashioning sentences under § 2G2.2, that "district court judges are encouraged to take seriously the broad discretion they possess" in sentencing "bearing in mind that they are dealing with an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results.").

It is therefore not surprising that, according to a 2021 Report issued by the U.S. Sentencing Commission on the Federal Sentencing on Child Pornography Production Offenses, while courts "continue to impose lengthy offenses" under at U.S.S.G. § 2G2.1, courts "increasingly apply downward variances in response to the higher guideline ranges that apply to the typical child pornography production offender." [5] According to the Report, most child

---

[5] Federal Sentencing of Child Pornography Production Offenses, United States Sentencing Commission, October 2021 at 21 (available at  https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf).

pornography production offenders sentenced under §2G2.1 were sentenced below the Guideline range in fiscal year 2019. *Id.* at 22. Indeed, as emphasized by the below figure prepared by the U.S. Sentencing Commission,  less than one-third (30.7%) of child pornography production offenders sentenced under §2G2.1 received a sentence within the Guideline range in the same year. *Id.*



Figure 8. Sentence Imposed Relative to the Guideline Range for §2G2.1 Offenders
*Fiscal Year 2019*

Further, in fiscal year 2019, the majority of child pornography production offenders sentenced under §2G2.1 (57.2%) received a variance below the guideline range under 18 U.S.C. § 3553(a).  *Id.* at  p. 22. As emphasized in the below graph prepared by the U.S. Sentencing Commission, the percentage of child pornography production offenders sentenced below the Guideline range has also increased significantly over time. Indeed, the rate of within-range sentences for offenders sentenced under §2G2.1 has decreased steadily since fiscal year 2005, from 83.3 percent to only 30.7 percent in fiscal year 2019.  *Id.* at p. 22.

14



Figure 9. Sentence Imposed Relative to the Guideline Range for §2G2.1 Offenders
Fiscal Years 2005 – 2019

The PSR calculates an advisory guideline range of 292-- 360 months. Probation recommends a sentence at of 292 months. This range is much greater than necessary to promote the sentencing goals set forth in 18 U.S.C. § 3553(a). Under the facts and circumstances of this case, and in light of the above, a variance from 292 months to a sentence of 216 months is appropriate and justified, specifically where the child pornography guidelines are notoriously harsh and improperly skew sentences upward without regard to a particular defendant's conduct or characteristics. Finally, given that courts routinely grant variances in cases of this nature, the moderate variance requested by Mr. Sobash would further prevent unwarranted sentencing disparities under 18 U.S.C. § 3553 (a)(6).

<strong>CONCLUSION</strong>

Mr. Sobash deeply regrets his criminal conduct and understands that he deserves to be punished. Mr. Sobash respectfully submits that a sentence of 18 years (216 months) of

15

imprisonment is sufficient, but not greater than necessary, to promote the goals of sentencing pursuant to 18 U.S.C. § 3553 (a).

Respectfully submitted,

PHILIP TAYLOR SOBASH

By his attorney,

/s/ *Michael J. Connolly*
Michael J. Connolly, BBO#638611
(*Admitted pro hac vice*)
HINCKLEY, ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109
mconnolly@hinckleyallen.com
Tel. (617) 345-9000
Fax (617) 345-9020

/s/ *Jennifer Lynn Thompson*
Jennifer Lynn Thompson, BBO #18250
3200 West End Avenue, Suite 500 Nashville, TN 37203
 (615) 320-4344
nashvilleattorney@gmail.com

Dated: June 12, 2026

16

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document filed through the ECF system will be sent electronically by the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 12, 2026

/s/ *Jennifer L. Thompson*
Jennifer L. Thompson

17